JUDGE ENGELMAYER



11 CIV 7724

James A. Hunter (JH-1910)
HUNTER & KMIEC
150 East 44th Street, No. 9A
New York, New York  10017
Tel:      (646) 666-0122
Fax:      (646) 462-3356
E-Mail: hunter@hunterkmiec.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA ANN GABRIELE CHECHELE,<br><br>       Plaintiff,<br><br>       – v. –<br><br>CLAUDE GERMAIN and SMTC<br>CORPORATION,<br><br>       Defendants. | ECF CASE<br><br>No. _____<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Donna Ann Gabriele Chechele, by her attorneys Hunter & Kmiec, hereby complains of Defendants, averring as follows:

**JURISDICTION AND VENUE**

1.      This action arises under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).  Jurisdiction is conferred upon this Court with respect to Count I of this Complaint by Section 27 of the Act, 15 U.S.C. § 78aa.  Jurisdiction is conferred upon this Court with respect to Count II of this Complaint by Section 1(a) of the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

2.      Venue is properly laid in this District pursuant to Section 27 of the Act because some or all of the purchases and sales of securities giving rise to the liability described herein were executed in ordinary brokerage transactions through the facilities of The NASDAQ Stock Market LLC, a national securities exchange registered pursuant to Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.  Venue for Count II of this Complaint is properly laid in this District for the additional reason that the services provided by Plaintiff's counsel were performed in part in this District.

## THE PARTIES

### Parties to This Case

3.      Plaintiff Donna Ann Gabriele Chechele is a New Jersey resident and shareholder of Defendant SMTC Corporation (the "Company").

4.      The Company is a corporation organized under the laws of the State of Delaware with principal offices at 635 Hood Road, Markham, Ontario, Canada L3R 4N6.

5.      Defendant Claude Germain ("Germain") is a natural person and a resident of Ontario, Canada.  At all relevant times until June 21, 2011, Germain was a director of the Company and a "Member of the Interim Office of the Chief Executive Officer" of the Company.  At all times since June 21, 2011, Germain has served as the Company's Co-Chief Executive Officer.

### Other Relevant Parties

6.      Paul M. Blom ("Blom") is a natural person and a resident of Ontario, Canada.  At all relevant times, Blom was the Company's Senior Vice President.

## FACTUAL ALLEGATIONS

7.      The violations of Section 16(b) of the Act described herein involve non-exempt securities in non-exempt transactions engaged in by non-exempt persons within the meaning of the Act.

8.      At all relevant times, the Company's common stock was registered pursuant to Section 12 of the Act, 15 U.S.C. § 78*l*, and was listed for trading on the NASDAQ Global Market.

9.      This action is brought within two years of the occurrence of the violations described herein or within two years of the time when reports required by Section 16(a) of the Act, 15 U.S.C. § 78p(a), setting forth the substance of the transactions described herein were first filed with the U.S. Securities and Exchange Commission (the "SEC").

### Transactions in the Company's Common Stock
### by Paul M. Blom

10.     At all relevant times, Blom was an officer of the Company and thus subject to Section 16 of the Act.

11.     On November 22, 2010, Blom sold 6,892 shares of the Company's common stock at a weighted average price of $3.86 per share.  The actual sale prices were between $3.85 per share and $3.91 per share.

12.     On November 23, 2010, Blom sold 16,499 shares of the Company's common stock at a weighted average price of $3.88 per share.  The actual sale prices were between $3.85 per share and $3.96 per share.

13.     On May 16, 2011, Blom purchased 10,000 shares of the

Company's common stock at a price of $2.08 per share.

### Transactions in the Company's Common Stock
### by Defendant Claude Germain

14.     At all relevant times, Defendant Germain was a director or officer

of the Company and thus subject to Section 16 of the Act.

15.     On May 20, 2011, Defendant Germain sold 1,900 shares of the

Company's common stock at a price of $2.22 per share.

16.     On September 1, 2011, Defendant Germain purchased

20,000 shares of the Company's common stock at a weighted average price of $1.4978

per share.  The actual purchase prices were between $1.4824 per share and $1.50 per

share.

### Actions of Plaintiff's Counsel

17.     Plaintiff has been represented in this matter by Hunter & Kmiec, a

general partnership organized under the laws of the State of New York and devoted to the

practice of law ("Hunter & Kmiec").

18.     Plaintiff engaged Hunter & Kmiec to investigate possible

"short-swing" trading in the Company's common stock under Section 16 of the Act by

the Company's officers, directors, and significant shareholders.  Plaintiff's agreement

with Hunter & Kmiec entitled Hunter & Kmiec to a fair and reasonable fee contingent on

Hunter & Kmiec's recovery of funds for the Company.

**The Blom Section 16(b) Notice Letter**

19.     Based on its investigation as described in paragraph 18 above, Hunter & Kmiec notified the Company by letter dated May 18, 2011 that it believed Blom was liable to the Company under Section 16 of the Act to disgorge short-swing profits in an amount equal to approximately $18,000.00.  Hunter & Kmiec requested that the Company seek an accounting and disgorgement of all such profits from Blom.

20.     By letter dated June 23, 2011, Jane Todd, the Company's then-Senior Vice President and Chief Financial Officer, advised Hunter & Kmiec in pertinent part as follows: "Thank you for your letter dated May 18th, 2011.  We are aware of this issue and have settled the matter with Mr. Blom in accordance with recommendation for payment by our legal counsel."

21.     By e-mail dated June 23, 2011, Hunter & Kmiec asked the Company to pay Hunter & Kmiec a reasonable attorney's fee for Hunter & Kmiec's services in securing the recovery described in paragraphs 19-20 above.

22.     For over three months, the Company did not respond to Hunter & Kmiec's fee request.  The Company finally responded on October 18, 2011, when Ms. Todd spoke with undersigned counsel by telephone.  Ms. Todd explained on that telephone call that the Company would not pay Hunter & Kmiec any fee and added: "You can file a claim for [a fee] if you want."

**The Germain Section 16(b) Notice Letter**

23.     Based on its investigation as described in paragraph 18 above, Hunter & Kmiec notified the Company by letter dated September 7, 2011 that it believed

Defendant Germain was liable to the Company under Section 16 of the Act to disgorge short-swing profits in an amount equal to approximately $1,370.00. Hunter & Kmiec requested that the Company seek an accounting and disgorgement of all such profits from Defendant Germain.

24.     By e-mail dated September 14, 2011, Ms. Todd advised undersigned counsel in pertinent part as follows:

> We are in receipt of your letter dated September 7, 2010. The sale transaction that occurred for 1900 shares was on account of a broker error and not at the direction of Mr. Germain and is currently being evaluated by the SEC's ombudsman's office. In the meantime, Mr [sic] Germain has paid approximately $1300 to the Company, the profits net of 16(b) profits already paid immediately after the sale of shares. I trust that this brings this issue to rest.

25.     Based on Ms. Todd's e-mail of September 14, 2011 and on an October 18, 2011 telephone conversation with Ms. Todd, undersigned counsel understood that Defendant Germain had disgorged his short-swing profits to the Company under protest and that the Company would consent to return those profits if he secured favorable guidance on the question of his liability from the staff of the SEC.

26.     Undersigned counsel advised Ms. Todd that the SEC had no enforcement authority under Section 16(b) of the Act and that, accordingly, the informal position of the SEC's staff would not preclude Plaintiff from compelling disgorgement from Defendant Germain. Undersigned counsel advised Ms. Todd that Plaintiff intended to seek a declaratory judgment that Defendant Germain was liable to the Company under Section 16(b) of the Act.

27.     In response, Ms. Todd advised undersigned counsel by e-mail dated October 19, 2011 that "further to my call yesterday, Mr Germain has confirmed that he has sought legal counsel and will not be making a claim for the 16(b) payment made to SMTC."

28.     By e-mail dated October 20, 2011, undersigned counsel replied to Ms. Todd and asked for the contact information for Defendant Germain's attorneys.  The Company has not responded to that request.

## FIRST CLAIM FOR RELIEF
### (As to Defendant Claude Germain)

29.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-28 above.

30.     Defendant Germain's sale of the Company's common stock as described in paragraph 15 above occurred within six months of, and at a higher price than, each of Defendant Germain's purchases of the Company's common stock as described in paragraph 16 above.

31.     Defendant Germain had a pecuniary interest, directly or indirectly, in some or all of the shares of the Company's common stock purchased and sold as described in paragraphs 15 and 16 above.

32.     Under the "lowest-in, highest-out" method for computing realized profits pursuant to Section 16(b) of the Act, Defendant Germain realized recoverable profits as a result of the transactions described in paragraphs 15 and 16 above in an aggregate amount not less than $1,372.18.

33.    Pursuant to Section 16(b) of the Act, the profits realized by Defendant Germain as described in paragraph 32 above inured to and are the lawful property of the Company, and Defendant Germain is liable to repay those profits to the Company.

34.    Both the Company and Defendant Germain have denied the liability described in paragraph 33 above.

35.    Although Ms. Todd has said that Defendant Germain "will not be making a claim for the 16(b) payment made to SMTC," neither her word nor the Company's word is binding on Defendant Germain.  The Company refused to provide Plaintiff with the name of Defendant Germain's legal counsel so that undersigned counsel could confirm Defendant Germain's intentions directly.

36.    Notwithstanding Ms. Todd's statement described in paragraph 35 above, the Company and Defendant Germain have never repudiated their earlier contentions denying that Defendant Germain bears any liability to the Company.  Indeed, Defendant Germain continued trying to claw back his unlawfully realized short-swing profits until undersigned counsel advised the Company that Plaintiff would seek a declaratory judgment that Defendant Germain was liable.

37.    An actual controversy exists as to whether Defendant Germain is liable to the Company under Section 16(b) of the Act.  There remains a substantial risk that, but for a declaration adjudging him liable, Defendant Germain will renew his attempt, with the Company's acquiescence, to claw back his unlawfully realized short-swing profits.

38.     Whether or not further relief is or could be sought, Plaintiff is entitled to a declaratory judgment that Defendant Germain is liable to the Company under Section 16(b) of the Act in an aggregate amount not less than $1,372.18.

### SECOND CLAIM FOR RELIEF
### (As to Defendant SMTC Corporation)

39.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-38 above.

40.     Acting pursuant to Section 16(b) of the Act, Plaintiff engaged Hunter & Kmiec to investigate potential "short-swing" trading in the Company's common stock.  In that connection, Hunter & Kmiec reviewed Section 16 reports filed by the Company's directors and officers and the holders of in excess of 10% of its outstanding shares of common stock; researched the law applicable thereto; determined that Blom and Defendant Germain were liable to the Company; computed the extent of their liability; and prepared and delivered statutory demands upon the Company notifying it of Blom's and Germain's liability.

41.     Prior to the receipt of Hunter & Kmiec's demands, the Company, Blom, and Germain were ignorant of their rights and obligations under Section 16(b) of the Act with respect to Blom's and Germain's transactions in the Company's common stock.

42.     As a direct and proximate result of Hunter & Kmiec's services as described herein, the Company is believed to have recovered short-swing profits (i) from

Blom in an amount equal to $18,000.00; and (ii) from Defendant Germain in an amount equal to $1,372.18.

43.     As a remedial incident to the authority granted to Plaintiff under Section 16(b) of the Act, Plaintiff is entitled to recover a fair and reasonable attorney's fee in consideration for the services provided by her attorneys Hunter & Kmiec, Plaintiff having agreed with such attorneys that they would be entitled to a fair and reasonable fee contingent on Hunter & Kmiec's recovery of funds for the Company.

44.     The Company has refused to pay Hunter & Kmiec any fee, despite receiving, accepting, and retaining the benefits provided by Hunter & Kmiec's services.

45.     Plaintiff and Hunter & Kmiec respectfully request an award of attorney's fees in an amount equal to $4,843.00, or approximately 25% of the $19,372.18 in short-swing profits that the Company is believed to have recovered from Blom and Defendant Germain through the services of Hunter & Kmiec.

46.     The fee described in paragraph 45 above is fair and reasonable in light of the benefits conferred upon the Company by Hunter & Kmiec and the reasonable value of Hunter & Kmiec's services.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

[*remainder of page intentionally left blank*]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

(a)     Declaring that Defendant Germain is liable to the Company under Section 16(b) of the Act in an aggregate amount not less than $1,372.18.

(b)     Awarding Hunter & Kmiec attorney's fees in the amount of $4,843.00, plus the costs of this action.

(c)     Granting to Plaintiff such other further relief as the Court may deem just and proper.

Dated: October 31, 2011
      New York, New York

HUNTER & KMIEC

By: _____

James A. Hunter
150 East 44th Street, No. 9A
New York, New York  10017
Tel:    (646) 666-0122
Fax:    (646) 462-3356
E-Mail: hunter@hunterkmiec.com

*Attorneys for Plaintiff*